# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR ZUNIGA VASQUEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | **Case No. 1:16-cv-00448-GSA**<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF OSCAR VASQUEZ AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY** |

## I.  INTRODUCTION

Plaintiff, Oscar Zuniga Vasquez ("Plaintiff"), seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for supplemental security income ("SSI") and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

///

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 7 and 9).

## II. BACKGROUND AND PRIOR PROCEEDINGS[3]

The parties agree that the Plaintiff properly exhausted his administrative remedies and that the Appeals Council denied Plaintiff's appeal. Therefore, this appeal is a review of Administrative Law Judge John Cusker's ("ALJ") decision issued on July 3, 2014, which is considered the Commissioner's final order. *See*, 42 U.S.C. §§ 405(g), 1383(c)(3).AR 15-23.

### A. Plaintiff's Claims and Issues Presented

Prior to issuing his order, the ALJ held a hearing on April 2, 2014. AR 424-469. Plaintiff and Vocational Expert ("VE") Jose Chaparro testified at the hearing. Plaintiff was fifty-one years old at the time of his hearing. AR 426. He applied for disability benefits after suffering a heart attack in March 2012, and claimed he was unable to work as a result of the attack. AR 17; 301; 426. Prior to his alleged date of disability, Plaintiff worked at Wawona Frozen Foods as a food processor where he stacked pallets and worked on the production line. AR 22; 427. The VE classified Plaintiff's past work at Wawona as a composite job consisting of several occupations including: a conveyor feeder, a packer of agricultural produce, a produce sorter, and a paperboard box maker. AR 457-463. On July 3, 2014, ALJ Cusker determined that Plaintiff did not meet the disability requirements under the Social Security Act because he could perform his past relevant work. AR 23.

Plaintiff now challenges the ALJ's decision, arguing that the ALJ incorrectly assessed the medical evidence. Specifically, Plaintiff contends the ALJ improperly rejected the opinion of consultative psychologist, Dr. Zhang, Ph.D., and that at a minimum, the ALJ had a duty to develop the record with respect to Dr. Zhang's opinion. Additionally, Plaintiff contends that the ALJ erred at step four because he erroneously determined that Plaintiff's past relevant work was a composite job and found that Plaintiff could perform this work generally and as actually performed. Plaintiff requests that the case be remanded for further proceedings so that these errors can be corrected.[4] (Doc. 15, pgs. 5-18; Doc. 17, 1-9).

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[4] Plaintiff raised these issues in the reverse order, but the ALJ's assessment of the medical evidence is a threshold issue in this case and will be addressed by the Court first.

2

In opposition, Defendant responds that: (1) the ALJ properly discounted Dr. Zhang's opinion; (2) the ALJ properly assessed Plaintiff's residual functional capacity ("RFC"); and (3) the ALJ properly assessed Plaintiff's ability to do his previous work (Doc. 16, pgs. 8-15).

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[5] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to

---

[5] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).

perform his past relevant work,[6] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 15-23. In particular, the ALJ found that Plaintiff met the insured status requirements through September 30, 2014, and that he had not engaged in substantial gainful activity since March 9, 2012, the alleged onset date. AR 17. Further, the ALJ identified "the residual effects of a myocardial infraction" as a severe impairment. AR 17. Nonetheless, the ALJ determined that Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 18.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform "essentially the full range of medium work with some environmental and mental limitations," meaning he: could lift or carry up to twenty-five pounds frequently and fifty pounds occasionally; could stand, walk, and sit for up to six hours in an eight-hour workday; could occasionally balance; needed to avoid concentrated exposure to temperature extremes; needed to avoid exposure to unprotected heights or hazardous machinery; could perform simple vocational directives; could focus for two-hour increments; and could perform unskilled work at a competitive pace and could tolerate the stress inherent in unskilled work. AR 18. The ALJ found that Plaintiff could perform his past relevant work as a food processor, which was a "composite job" consisting of the following constituent occupations: conveyor feeder/off bearer (DOT 921.686-014), packer-agricultural produce (DOT 920.687-134), produce sorter (DOT 529.687-186), and paperboard box maker (DOT 794.684-014). AR 22. Given the above, the ALJ did not proceed to step-five of the disability determination process and found that Plaintiff was not disabled as defined by the Social Security Act. AR 22.

///

---

[6] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

4

1  IV.   **STANDARD OF REVIEW**

2       Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

3  whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards.

4  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d

5  1071, 1074 (9th Cir. 2007).

6       "Substantial evidence means more than a scintilla but less than a preponderance."

7  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which,

8  considering the record as a whole, a reasonable person might accept as adequate to support a

9  conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one

10 of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

11 V.    **DISCUSSION**

12      **A. The Relevant Medical Evidence**

13      Plaintiff contends that the ALJ failed to provide legitimate reasons for rejecting the

14 opinions of state consultative physician Dr. J Zhang, Psy.D.  In reaching his conclusion, the ALJ

15 relied on two non-examining state agency doctors' (Dr. Gregg and Dr. Hawkins) opinions. AR

16 20-22.  Because Dr. Zhang only assessed Plaintiff's psychological symptoms, the Court's review

17 of the medical evidence will be limited to the records dealing with his mental impairments.

18 Plaintiff has not challenged the ALJ's findings with respect to his physical impairments.

19           *i. Dr. J. Zhang, Psy.D.*

20      In July 2012, Dr. J. Zhang, Psy.D., saw Plaintiff for a consultative psychological

21 examination. AR 301-305. Plaintiff reported a history of anoxic encephalopathy (brain damage

22 from lack of oxygen) following a heart attack. AR 301. Plaintiff advised the doctor that he had

23 dropped out of school in the ninth grade and received special education for speech problems

24 while in school. AR 301. He reported he had friends and was social at the time of the assessment.

25 AR 302. He also denied psychotropic medication. AR 302.

26      Plaintiff reported he could generally perform normal activities of daily living, including

27 good sleep, hygiene, spending time doing light gardening and housekeeping, and watching

28 movies, though he did report "some difficulty completing housekeeping chores." AR 302. On

examination, Dr. Zhang noted that Plaintiff was oriented on all spheres, he was appropriately attired, and had appropriate speech and thought processes. AR 302. Plaintiff "described his mood as being somewhat depressed," though his affect was intact. AR 302.

After administering the Wechsler Adult Intelligence Scale IV ("WAIS-IV"), the Wechsler Memory Scale IV, and Bender-Gestalt II Test (used to assess visual-motor abilities in brain damaged patients), Dr. Zhang noted that Plaintiff's attention and concentration was fair and that he had average insight abilities and fair judgment. AR 303. He found that Plaintiff scored in the moderately limited range on all three standardized tests which was consistent with his recent history of brain injury. AR 304-305.

Dr. Zhang diagnosed cognitive disorder, NOS (not otherwise specified), depressive disorder NOS, and opined that Plaintiff had moderately limited cognitive functioning. AR 305. Dr. Zhang opined that Plaintiff would have the following limitations: no limitations in the ability to understand, remember, and carry out simple one-or two-step instructions; moderate limitations in the ability to understand, remember, and carry out complex instructions; mild limitations in the ability to relate and interact with the public, coworkers, and supervisors; moderate limitations in the ability to maintain concentration, persistence, and pace; mild limitations in ability to accept instruction from supervisors; moderate limitations in the ability to maintain regular attendance and perform work activities consistently; moderate limitations in the ability to perform work activities without special supervision; and that he was not capable of managing funds. AR 305.

### ii. State Agency Doctors

In September 2012, Dr. Kevin Gregg, M.D., a State agency reviewing physician, opined that Plaintiff was capable of sustained simple work. AR 31; 34-38. Dr. Hawkings, Ph.D., adopted Dr. Gregg's findings on March 30, 2013. AR 55.

**B. Legal Standards**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to

know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir.2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

**C. The ALJ Did Not Give Legitimate Reasons for Rejecting Dr. Zhang's Opinion.**

The ALJ rejected Dr. Zhang's findings because Dr. Zhang's opinions were more restrictive than the opinions of Drs. Gregg and Hawkins. Because there were contradictory opinions, the ALJ only needed to provide specific and legitimate reasons supported by substantial evidence to reject Dr. Zhang' s opinion. A review of the record reveals that the ALJ did not do so here.

The ALJ discusses Dr. Zhang's findings as follows:

> I have also considered the consultative examiner, whose opinion was discounted by the psychological consultants. On July 31, 2012, the claimant attended a psychological assessment with J. Zhang Psy.D. The claimant reported experiencing cognitive difficulties and mild depressions since his heart attack in March 2012. Cognitive testing revealed a full scale–IQ of 72, which was consistent with his reports of brain injury during his heart attack. The claimant scored in the "moderately limited range" on memory testing. Other testing showed "moderately limited" perceptual motor integration abilities. Dr. Zhang diagnosed cognitive disorder not otherwise specified (NOS) and depressive disorder NOS, and opined that the claimant had no limitations performing one and two-step tasks. Dr. Zhang assessed "mild limitations" related to others and accepting instructions from supervisors. Dr. Zhang opined Plaintiff had "moderate limitations" performing complex tasks, maintaining adequate concentration, persistence, and pace, complying with attendance and safety, maintaining attendance, and performing work activities without special supervision.
>
> I give some weight to Dr. Zhang's opinion. Specifically, I find Dr. Zhang's opinion that the claimant could perform simple repetitive tasks consistent with other record evidence, and the psychological consultant's opinions. However, Dr. Zhang's use of the term "moderately limited" to define limitations is vague and ambiguous. Dr. Gregg considered the opinion, and concluded that it was based on the claimant's subjective perception of his limitations, rather than objective findings. Thus, Dr. Gregg opined that Dr. Zhang's assessment was overly restrictive. Dr. Gregg also noted that the record did not contain an assessment [of] the claimant's mental functioning prior to his heart attack; hence it was impossible to determine whether his heart attack significantly altered his cognitive functioning. I agree with Dr. Gregg's opinion, and note that Dr. Hawkins endorsed it on reconsideration.

AR 20-21 (internal citations omitted).

Thus, the ALJ rejected Dr. Zhang's moderate limitations because: (1) the doctor's term "moderately limited" to define these restrictions was vague and ambiguous; (2) as noted by Dr. Gregg, Dr. Zhang's findings were based on Plaintiff's subjective reports rather than on objective testing, and therefore the limitations were overly restrictive; and (3) the record did not contain a pre-assessment level of Plaintiff's mental functioning therefore, it was impossible to determine

8

whether this heart attack altered his cognitive abilities. AR 20-21.

As a preliminary matter, the Commissioner correctly notes that an ALJ may reject a physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, that is not what happened here. While Dr. Zhang did a clinical interview of Plaintiff, the majority of the report was not based on Plaintiff's subjective reports. Instead, it was based on extensive objective testing including the Wechsler Adult Intelligence Scale IV, the Wechsler Memory Scale IV, and Bender-Gestalt II Test (used to assess visual-motor abilities in brain damaged patients). All of these tests indicated Plaintiff was moderately limited in all areas. AR 301. Therefore, Dr. Gregg's rejection of Dr. Zhang's moderate findings because they were based on Plaintiff's subjective perception of his abilities is not accurate, and the ALJ's reliance on Dr. Gregg's assessment for this purpose was error.

Similarly, the Court is not persuaded by the ALJ's second reason for rejecting large portions of Dr. Zhang's report - namely, that there is nothing in the record regarding Plaintiff's cognitive functioning levels prior to his heart attack, so it is impossible to determine whether his heart attack altered his cognitive functioning. AR 21. In this case, Plaintiff's prior functioning is not relevant to determining what his current level of cognitive functioning is. In other words, the ALJ's purpose is to determine whether Plaintiff was able to work at the time of the decision. Whether Plaintiff had more or less abilities prior to his heart attack is not going to affect what his abilities are during the relevant time period. Therefore, this is not a legitimate reason to reject portions of Dr. Zhang's opinion.

The remaining reason the ALJ gave to reject Dr. Zhang's moderate limitations is that the doctor's definition of the term "moderate" was vague and ambiguous and therefore, the assessment was overly restrictive. AR 21. This finding is relevant to Plaintiff's argument that the ALJ had a duty to more fully develop the record. An ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is triggered when there is "[a]mbiguous evidence" or on "the ALJ's own finding that the record is inadequate to allow for proper evaluation of the

9

evidence." *Id*. Once the duty is triggered, the ALJ must "conduct an appropriate inquiry," which can include "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.*

Here, by his own assessment, the ALJ found the moderate limitations in Dr. Zhang's report to be "vague and ambiguous." AR 21. Defendant argues that there was no duty to more fully develop the record because there was other evidence in the record, namely Dr. Gregg's and Dr. Hawkin's reports that the ALJ relied upon when developing the RFC. It is true that the opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). However, there are several problems with the application of this principle here.

First, Dr. Zhang, a state agency consultative psychologist, performed extensive objective testing on Plaintiff and was the only doctor with a specialization in cognitive functioning and social security disability issues to physically examine the Plaintiff.[7] Moreover, after Drs. Gregg and Hawkins completed their review of the medical record, Plaintiff reported additional memory problems to his primary care physician which were never evaluated. AR 434; 354; 357. The ALJ attempts to address this concern by noting that Plaintiff had a subsequent CT scan of his head which revealed no acute abnormalities (AR 354) that would explain the self-reported memory loss. AR 20. However, no psychologist or medical doctor had come to this conclusion. Instead, the ALJ interpreted the CT scan and came to a medical conclusion regarding its meaning. An ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay person, the ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; he is "simply not qualified to interpret raw medical data in functional terms."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . ." (citations and quotation marks omitted)); *Rohan v. Chater*, 98 F.3d 966,

---

[7] While Dr. Hawkins is a Ph.D., Dr. Gregg is a medical doctor , M.D. AR 31; 33; 55.

970 (7th Cir. 1996) (the ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (the ALJ may not substitute his interpretation of laboratory reports for that of a physician). This is especially true when evaluating the opinions of treating physicians and specialists whose opinions are entitled to deference. 20 C.F.R. § 404.1527(c)(2) (Generally, more weight is given to treating physicians and specialists about medical issues related to his or her specialty area); *Holohan v. CSS*, 246 F. 3d 1195, 1202-1203 n. 2 (9th Cir. 2001) (specialty of medical source is relevant when weighing opinions). In this instance, the ALJ made an assessment of the Plaintiff's continued and increased memory difficulties without a medical opinion assessing his complaints which is error.

The Commissioner argues that any error with regard to the ALJ's rejection of portions of Dr. Zhang's report is harmless because the RFC incorporated all of the moderate limitations of Dr. Zhang's report. The Court disagrees. A residual functional capacity is what a claimant "can still do despite [his or her] limitations," and it should include all the limiting effects of an impairment. 20 C.F.R. §§ 404.1545(a)(e) and 416.945(a)(e). Here, the ALJ's mental RFC states that Plaintiff is able to understand and remember simple vocational directives; can sustain focus for two-hour increments; can perform unskilled work at a competitive pace without additional supervision; and can tolerate the stress inherent in unskilled work. AR 18. However, Dr. Zhang found moderate limitations in the following areas: Plaintiff's ability to carry out complex tasks; his ability regarding concentration, persistence and pace; his ability associated with common work activities including attendance and safety; his ability to maintain regular attendance and perform work activities consistently; and his ability to perform work activities without special or additional supervision. AR 305. Arguably, the RFC addresses Dr. Zhang's moderate limitations regarding Plaintiff's ability to carry out complex tasks, as well as his concentration and persistence abilities since the RFC limits Plaintiff to simple unskilled work and caps his ability to focus at two-hour intervals. Nevertheless, the RFC does not encompass the other moderate limitations Dr. Zhang identified, and as previously explained the ALJ did not properly reject this opinion. Furthermore, neither Dr. Zhang or the ALJ defined the term "moderate," so this Court

cannot determine if the RFC incorporated all of Dr. Zhang's limitations.

The Commissioner urges this Court to use the definition outlined in HALLEX 1-2-5-20, 1992 WL 601808 and Form HA-1152-U3, which defines a "moderate" rating as a "moderate limitation in this area but the individual is still able to function satisfactorily." (Doc. 16, Pg. 13). However, the Court is prohibited from making *post hoc* findings on appeal. It is well established that a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review only the reasons the ALJ asserts").

**D. Remand**

In light of the above, the case will be remanded. A court should remand with for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F. 3d 995, 1020-1021 (9th Cir. 2014).

Here, the ALJ's errors and his concerns that Plaintiff is not disabled require that the case be remanded to more fully develop the record. Specifically, the ALJ either needs to properly to reject Dr. Zhang's moderate limitations, or alternatively, incorporate them into the RFC. On remand, the ALJ shall order an additional evaluation to assess Plaintiff's memory problems that have allegedly increased since the time of the prior medical opinions. The ALJ may also request further information from Dr. Zhang (if necessary after the new evaluation is done) regarding the definition of the moderate limitations in his report. Any subsequent decision shall discuss what weight is assigned to each doctor's opinion, the reasons for making such a determination, and why substantial evidence supports that conclusion. The ALJ should then formulate a RFC that encompasses any limitations and/or opinions that are supported by substantial evidence.

Importantly, the Court expresses no opinion regarding how the evidence should ultimately be weighed, or how any ambiguities or inconsistencies are resolved on remand. The Court also

does not instruct the ALJ to credit any particular opinion or testimony provided that the ALJ's determination complies with applicable legal standards, is clearly articulated via appropriate reasoning provided in the decision, and is supported by substantial evidence in the record.

Because the Court remands this case for renewed consideration of the medical evidence, the Court dispenses with an exhaustive analysis of whether the ALJ erred by finding that Plaintiff could perform his past work as a food processor as actually and as generally performed. A re-evaluation of the medical evidence may impact the ALJ's findings in this area. Notwithstanding , however, the Court notes that when the ALJ considered Plaintiff's past work as it was actually performed, he did not consider Plaintiff's responses in the Adult Disability Rreport that addressed the activities Plaintiff performed at his last job (such as standing for eight hours) which appears to exceed the limitations outlined in Plaintiff's RFC. AR 161. Similarly, the VE did not discuss the functional duties Plaintiff performed at each of his prior jobs when assessing his work as actually performed. AR 457-461. Instead, the VE relied on the Dictionary of Occupational Titles (DOT) to assess Plaintiff's past work which is not consistent with agency policy. *See*, Program Operations Manual Systems ("POMS") DI 25005.020 ("Do not use the DOT to fill in missing information about job requirements"). The VE and the ALJ also used the DOT to evaluate the composite job as the work was generally performed in the national economy which is also contrary to agency policy. ("A composite job does not have a DOT counterpart so do not evaluate it as part of the step four consideration work as "generally performed in the national economy.")  Although the POMS does not have the full force of law and is not judicially enforceable in all circumstances, the POMS is persuasive authority. *Kennedy v. Colvin*, 738 F. 3d 1172, 1177 (9th Cir. 2013) ( POMS may be entitled to respect to the extent it provides a persuasive interpretation of an ambiguous regulation, but it 'does not impose judicially enforceable duties on either this court or the ALJ.' ").  Accordingly, on remand, it is recommended that the ALJ consider the directives in the POMS when evaluating Plaintiff's past work.

Finally, on remand, the ALJ will have an opportunity to further consider these issues, and address the medical evidence and non-medical testimony in context of the record as a whole. The ALJ will also be free to reevaluate his analysis and/or further develop the record with respect to

these or any other additional issues.

**VI.     CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not significantly limited in his ability to perform basic work activities is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, the Court GRANTS Plaintiff's appeal. The action is remanded to the Commissioner for further administrative proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Oscar Zuniga Vasquez and against Nancy A. Berryhill, Commissioner of Social Security, and to close this action.

IT IS SO ORDERED.

    Dated:   **June 16, 2017**                             **/s/ Gary S. Austin**
                                                                        UNITED STATES MAGISTRATE JUDGE